## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                                            :

GILBERT W. PHARES (Deceased) and          :     Bankruptcy No.    04-33251-JAD
REBECCA B. PHARES,                               :
                                                 :
            Debtors.                            :     Chapter 7
_____         :
                                                 :
GILBERT W. PHARES  (Deceased) and        :
REBECCA B. PHARES,                               :
                                                 :
            Movants,                            :
      v.                                        :     Doc. Nos.    54, 55
                                                 :
PNC BANK, NATIONAL                            :
ASSOCIATION,                                     :
                                                 :
            Respondents.                        :
                                                 :

### MEMORANDUM OPINION

The matter before the Court is the *Motion to Avoid Judicial Lien on Real Property* (the "Avoidance Motion") filed by Rebecca B. Phares (the "Debtor").[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a). This matter is core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O). For the following reasons the Avoidance Motion will be denied.

### I.

The facts of this case are generally uncontested. The Debtor is the owner of real property known as 49 Carleton Drive, Pittsburgh, Pennsylvania (the

---

[1] It appears from the captions of the *Debtor's Motion to Reopen* and the Avoidance Motion that the Debtor's husband, Mr. Gilbert W. Phares, passed away at some point following the initial closure of the above-captioned case.

00005837.WPD

"Property"). PNC Bank, National Association ("PNC") is the holder of a judgment lien against the Property (the "Lien"). The Lien arose on or about July 8, 2004, as the result of a default under a pre-petition business line of credit agreement which the Debtor and her now deceased husband, Gilbert W. Phares, unconditionally guaranteed.

On October 5, 2004, the Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code. On their Schedule A, the Debtors asserted the Property was worth $196,400.00 and was subject to $207,801.64 in secured claims including a claim of PNC, unrelated to the Lien, in the amount of $91,804.74[2] and a mortgage in the amount of $115,996.90 in favor of Washington Mutual Mortgage. The Debtors did not claim a homestead exemption on Schedule C. The Debtors improperly listed the Lien on Schedule F, as an unsecured nonpriority claim in the amount of $56,902.46.

The Honorable M. Bruce McCullough entered an order on October 31, 2005 discharging the Debtors and closed the case that same day. The Debtors did not move to avoid the Lien prior to the closing of the case.

On June 16, 2009, PNC filed a *Praecipe for Writ of Revival* of the Lien in the Court of Common Pleas of Allegheny County (the "State Court"). The Debtors filed an answer arguing that their obligations pursuant to the Lien were discharged in

---

[2] This debt a was reaffirmed prior to the Debtors receiving a discharge. (See Doc. #19).

the bankruptcy.  On December 15, 2009, the State Court granted PNC's Motion for Summary Judgment upholding the validity of the Lien.

It was not until December 22, 2010, that the *Debtor's Motion to Reopen* was filed with this Court for the stated purpose of avoiding the Lien, to which PNC timely objected.  Following the January 25, 2011 hearing on the *Debtor's Motion to Reopen,* the Honorable Bernard Markovitz[3] entered an order reopening the Debtor's case and instructing the Debtor to take any action deemed appropriate within twenty days of the date of the order.

Within the time frame contemplated by Judge Markovitz's order, the Debtor filed the Avoidance Motion and Amended Schedules A and C adjusting the value of her interest in the Property and claiming an exemption in the Property.[4]  PNC filed an objection to both the Debtor's amended schedules and the Avoidance Motion.  A hearing was held on March 15, 2011, and this Court took the matter under advisement.

---

[3] The Honorable Bernard Markovitz was hearing some of the cases on this Court's docket on January 25, 2011, as a result of a reassignment of cases pursuant to General Order 2010-10 following the untimely passing of the Honorable M. Bruce McCullough.

[4] The Debtor simultaneously filed an Adversary Complaint pursuant to 11 U.S.C. §§ 522(h) and 547(c)(5) seeking to set aside the Lien as a preferential transfer. (See Doc. #53).  The Debtor's Complaint was dismissed with prejudice following a hearing held April 5, 2011, as the preference complaint was filed after the statue of limitations outlined in 11 U.S.C. § 546(a)(1) had run. (See Adv. No. 11-2090JAD, Doc. #10 and Audio Recording of Hearing Held in Courtroom D, April 5, 2011 (10:23 - 10:24 AM)).

## II.

In defense to the instant Motion, PNC argues two points.  First, PNC insists that Fed.R.Bankr.P. 1009 bars the Debtor from amending the exemptions claimed in her schedules after the case was originally closed, and, as such, the Debtor is foreclosed from avoiding the Lien.  Second, PNC alleges that the equitable doctrine of laches bars the avoidance of the Lien.  The Court will address these matters in reverse order (i.e., laches first and the amended exemptions second).

## A.

Laches is an equitable remedy which allows courts to dismiss an action when prejudice to the non-moving party will result from an inexcusable delay by the plaintiff in instituting the action.  In re Levy, 256 B.R. 563, 566 (Bankr. D.N.J. 2000) (citing Kepner-Tregoe, Inc. v. Executive Dev., Inc., 79 F.Supp.2d 474, 486 (D.N.J. 1999)).  The burden of proof rests with the party asserting the defense.  Id. (citing U.S. v. Koreh, 59 F.3d 431, 445-46 (3d Cir. 1995)).  To establish prejudice, PNC must demonstrate that there was "a change in position, during the period of delay, which will cause injury to the rights of the creditor or third parties." Unifund C.C.R. Partners v. Sheckard (In re Sheckard), 394 B.R. 56, 66 (E.D. Pa. 2008) (citing In re Quackenbos, 71 B.R. 693, 695 (Bankr. E.D. Pa. 1987)).

In the instant matter, PNC alleges the Debtor's delay was inexcusable and that it would be unfairly prejudiced if its lien were avoided.  This Court finds PNC's argument to be meritorious.

The Debtor offers no excuse for her delay in challenging the Lien. The Debtor does not dispute that she was aware of the Lien prior to filing the bankruptcy petition in 2004, as she signed the certified mail receipt for the judgment notification. (See *PNC Bank, National Association's Objection to the Debtors' Amended Exemptions and Motion to Avoid Judicial Lien on Real Property*, Doc. #62, "Exhibit A"). Additionally, the Debtor admits in her pleadings that "the Debtors made several request [sic]" that her prior attorney avoid the judgment. (See *Debtor's Motion to Reopen*, Doc. # 44, ¶3). Despite the Debtor's knowledge of the Lien, there was a delay of over five years between the time this case was initially closed and the filing of the Avoidance Motion.

The record also supports a finding that PNC would be prejudiced if the Debtor were permitted to avoid the Lien following this substantial delay. While delay alone is not sufficient to constitute prejudice, "delay may be prejudicial when it is combined with other factors." In re Bianucci, 4 F.3d 526, 528 (7th Cir. 1993); see also In re Frasier, 294 B.R. 362, 367 (Bankr. D. Colo. 2003) ("[A] long delay in reopening a case--in conjunction with other factors, may constitute prejudice.") (citing In re Bianucci, 4 F.3d at 528). Such "other factors" are present here. Not only did the Debtor challenge PNC's attempt to protect its lien position in State Court during the period of delay, but if the Avoidance Motion proceeds to trial, PNC will be forced to obtain a new appraisal valuing the Property "as of" the filing date more than six years ago.

The undisputed facts indicate that in June of 2009, pursuant to a state statutory requirement,[5] PNC filed a praecipe for writ of revival in the State Court seeking to protect its lien position. Instead of attempting to reopen her bankruptcy case to avoid the Lien at that time, the Debtor elected to challenge PNC's writ of revival action in State Court. It was only <u>after</u> losing her battle in State Court and causing PNC to incur needless expense that the Debtor sought to reopen the bankruptcy case. In fact, the Debtor waited more than a full year after PNC spent both time and money in State Court before filing the instant Avoidance Motion.

By waiting until this late hour to seek avoidance of the Lien, the Debtor has created a situation where PNC should have been able to reasonably rely on the validity of its Lien. In fact, several courts have found that lienholders are prejudiced when a debtor has delayed bringing a motion to reopen or avoid a lien until after the lienholder has borne the expense of reviving or defending its judgment. <u>See e.g.</u>, <u>In re Bianucci</u>, 4 F.3d at 529 (holding a bankruptcy court properly declined to reopen a case when the debtors delayed five months after having actual knowledge of the judgment lien and the creditor had expended funds in state court to revive its judgment); <u>In re Frasier</u>, 294 B.R. at 368 (holding

---

[5] Pa.R.C.P. No. 3023(c) provides that judgment liens shall continue for five years from the date the judgment was entered, unless the judgment is sooner discharged or revived. To continue a judgment beyond this five year period, Pa.R.C.P. No. 3025 requires that the lienholder file a praecipe for writ of revival (or an agreement to revive) with the prothonotary in the county in which the judgment was entered.

that creditors were prejudiced by a debtor's delay when creditors had incurred fees and expenses in attempting to enforce their liens and in pursuing post-judgment collection efforts).

Forcing PNC to expend additional funds to obtain an appraisal "as of" the Debtor's petition date over six years ago is an aggravating factor. While this Court makes no determination as to whether an appraisal "as of" the petition date is more or less difficult or costly to obtain than a current appraisal, it is beyond question that if forced to litigate the Avoidance Motion, PNC would have to bear an additional expense to obtain such an appraisal several years after originally confessing judgment against the Debtor in State Court.[6] This additional expense supports a finding that the Debtor's delay is prejudicial to the interest of PNC. In re Caicedo, 159 B.R. 104, 107 (Bankr. D. Conn. 1993) ("Additional expense imposed on a creditor to defend has to be a relevant factor in assessing prejudice.") (citations omitted).

It is well settled that judgments pass through bankruptcy unaffected. Dewsnup v. Timm, 502 U.S. 410, 417 (1992). The apparent failure of the Debtor's prior attorney to grasp this concept is not an excuse that would justify forcing

---

[6] Courts disagree about whether the cost of such an appraisal is more or less prejudicial than forcing an appraisal based on current value of the property in question. Compare In re Levy, 256 B.R. 563, 566 (Bankr. D.N.J. 2000) (holding that the additional expense and difficulty in attempting to appraise a property's value "as of" the petition date would prejudice the creditor) with In re Sheckard, 386 B.R. 118, 128 (Bankr. E.D. Pa. 2008) aff'd, 394 B.R. 56 (E.D. Pa. 2008) (finding no prejudice resulted solely from the alleged difficulty associated with obtaining an "as of" appraisal).

PNC to revisit the validity of its Lien for yet a third time. See In re Dator, No. 98-15046-JNF, 2006 WL 2056678, at *3 (Bankr. D. Mass. July 21, 2006) (finding debtors' delay in moving to reopen a case was inexcusable even assuming debtors' former counsel was negligent in failing to previously avoid the judicial liens in question). As a result, this Court holds that the additional expense associated with obtaining an appraisal of the Property's value "as of" the Debtor's petition date in addition to the time and money PNC has already expended to ensure the continued viability of its Lien in State Court constitutes sufficient prejudice to support the equitable defense of laches, thereby warranting dismissal of the Avoidance Motion.

This Court's decision to dismiss the Avoidance Motion as a result of the otherwise likely prejudice to PNC is supported by the policy of ensuring finality in bankruptcy proceedings. In addition to ensuring the debtor a fresh start, "Congress established finality as an important goal of bankruptcy law." Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq), 153 F.3d 113, 119 (3d Cir. 1998). To find that the Debtor should be permitted at this late hour to avoid a lien in existence at the time the case was initially filed, despite prejudice to a creditor, would "neutralize and vitiate the finality of the discharge entered . . . ." In re Frasier, 294 B.R. at 369. A secured creditor should be entitled to assume following the closure of a debtor's bankruptcy case and subsequent state court litigation confirming the validity of its lien, that its secured status will not be

subject to further disruption. See In re Serafini, 30 B.R. 606, 608 (Bankr. W.D. Pa. 1983) (citations omitted).

## B.

The Debtor asserts that because PNC previously raised the equitable defense of laches with regard to the *Debtor's Motion to Reopen,* and the case was ultimately reopened, that the preclusive doctrine of res judicata applies to bar the laches defense in the instant matter. (See Audio Recording of Hearing Held in Courtroom D, March 15, 2011 (10:49 - 10:51 AM)). The Debtor's assertion is incorrect.

The doctrine of res judicata (claim preclusion) "protect[s] litigants from the burden of relitigating an identical issue with the same party or his privy . . . ." Mullarkey v. Tamboer (In re Mullarkey), 536 F.3d 215, 225 (3d Cir. 2008) (quoting Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007)). Res judicata bars not only claims that could have been asserted in a previous action but also "issues that could have been raised as a defense to a claim." In re Berg, Civ. A. No. 90-3693, Bankruptcy No. 89-13718S, Adv. No. 90-0100S, 1990 WL 175690, at *3 (E.D. Pa. Nov. 9, 1990) (citing Nevada v. United States, 463 U.S. 110, 130 (1983)). For res judicata to apply there must be: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." In re Mullarkey, 536 F.3d at 225 (quoting Post, 501 F.3d at 169).

In the instant matter, the Debtor is seeking to use the doctrine of res judicata offensively to bar PNC from asserting the defense of laches to the Avoidance Motion. This argument must be rejected as the laches defense was <u>not</u> asserted with regard to "the same cause of action" as the motion to reopen and subsequently there was no "final judgment on the merits" as to the laches defense regarding the Avoidance Motion.

While an action pursuant to 11 U.S.C. § 522(f) may constitute "cause" to reopen a bankruptcy case,[7] a decision to reopen the case is <u>not</u> a final determination as to the § 522(f) motion or any defenses available thereto. Indeed, the issue of whether laches would prevent the reopening of a case pursuant to 11 U.S.C. § 350(b) is distinct from the issue of whether a creditor would be prejudiced if a debtor were permitted to avoid its lien pursuant to 11 U.S.C. § 522(f). <u>See</u> <u>Staffer v. Predovich (In re Staffer)</u>, 306 F.3d 967, 972 (9th Cir. 2002) (affirming a B.A.P. decision that the question of whether the debtor could successfully assert a laches defense of a nondischargeability action was not appropriately considered at the motion to reopen stage).

---

[7] <u>See</u> <u>e.g.</u>, <u>In re Levy</u>, 256 B.R. 563, 565 (Bankr. D.N.J. 2000) ("Section 522 lien avoidance has been recognized as sufficient cause for reopening a case under section 350(b). . . .") (citing <u>Matter of Caicedo</u>, 159 B.R. 104, 105-06 (Bankr. D. Conn. 1993)); <u>In re Kelly</u>, 311 B.R. 341, 344 (Bankr. W.D.N.Y. 2004) (finding that submission of an application to avoid liens constitutes "cause" to reopen a case pursuant to 11 U.S.C. § 350(b)) (citing 3 <u>Collier on Bankruptcy</u>, P350.03[4] (Alan N. Resnick & Henry J. Sommer, eds. (15th ed. rev. 2002))).

It is true that, when considering a motion to reopen, courts often discuss the merits of the underlying cause of action for which the case is to be reopened to determine whether there exists a "valid purpose" for reopening the case. See e.g., In re Fellheimer, 443 B.R. 355 (Bankr. E.D. Pa. 2010) (denying a creditor's motion to reopen when "no valid purpose" would be served by reopening the case as the statutory limitation periods for the underlying action had run). However, the two issues are separate and cannot be properly merged for the purpose of offensively asserting a preclusive doctrine. See In re OORC Leasing, LLC, 359 B.R. 227, 229 (Bankr. N.D. Ind. 2007) ("The merits of the forthcoming request are not properly a part of the issues presented by a motion to reopen . . .; so anything the court might say with regard to the parties' ultimate dispute should have no res judicata or collateral estoppel effect.").

In OORC Leasing, the Honorable Robert E. Grant persuasively cautioned against conflating the merits of the dispute for which a case is to be reopened with the issue of whether "cause" exists to reopen a case, stating:

> By intermingling the issue of reopening with defenses to the relief that will be sought if the case is reopened, the true question presented by a motion to reopen -- which is what types of actions which someone would like to take in the bankruptcy court constitute cause to reopen a case -- is obscured. Once obscured, the concept of what constitutes cause to reopen a case under § 350(b) then becomes thoroughly muddled.

OORC Leasing, 259 B.R. at 230.

The <u>only</u> issue before Judge Markovitz when considering whether to reopen the case was whether sufficient <u>cause</u> existed to reopen the case pursuant to 11 U.S.C. § 350(b). Judge Markovitz's decision to reopen the case did not constitute a final judgment on the merits regarding the Avoidance Motion or any defenses that could be asserted thereto; it <u>only</u> served to reactivate the case, thereby providing the Debtor with a platform to plead her request for relief. <u>See Cusano v. Klein</u>, 264 F.3d 936, 948 (9th Cir. 2001) ("the mere reopening of a bankruptcy case is a ministerial act that 'lacks independent legal significance and determines nothing with respect to the merits of the case . . .'") (quoting <u>In re Menk</u>, 241 B.R. 896, 913-17 (B.A.P. 9th Cir. 1999)).

Judge Markovitz's order reopening the case made no findings with regard to whether laches, or any other affirmative defense to the Avoidance Motion, would be accepted by the Court. In fact, from the terms of the order which allowed the Debtor twenty days to "take any action deemed appropriate," it is clear that no determination was made with regard to any substantive relief the Debtor might seek once the case was reopened or any defenses that might be asserted thereto. As a result, the Debtor's assertion that reopening the case carried some sort of preclusive effect as to the separate issue of whether PNC's lien could ultimately be avoided is simply incorrect.

00005837.WPD

### C.

As its second point, PNC objects to the Debtor's filing of Amended Schedules A and C, within which the Debtor claims a homestead exemption for the first time. In support, PNC cites to Federal Rule of Procedure 1009(a), which states in pertinent part that "[a] . . . schedule . . . may be amended by the debtor . . . at any time <u>before the case is closed</u>." Fed.R.Bankr.P. 1009(a) (emphasis added).

Courts have reached differing conclusions regarding whether a debtor may avoid a judicial lien without claiming an exemption in the property subject to the lien. <u>See</u> <u>Botkin v. Dupont Cmty. Credit Union</u>, 432 B.R. 230, 233 (W.D. Va. 2010) (citing cases). Courts also differ as to whether the language of Fed.R.Bankr.P. 1009(a) is a bar to amending a claim of exemptions in a reopened case. <u>Compare</u> <u>In re Goswami v. MTC Distrib. (In re Goswami)</u>, 304 B.R. 386, 392-93 (B.A.P. 9th Cir. 2003) (holding that a debtor may amend a claim of exemptions in a reopened case) <u>with</u> <u>In re Barlett</u>, 326 B.R. 436, 441 (Bankr. N.D. Ind. 2005) (holding the debtors' attempt to amend their schedules after the closing of their case was of no effect).

This Court need not weigh-in on the aforementioned debates at this time. The Court has already found that sufficient prejudice exists to deny the Avoidance Motion. Several courts have held that such prejudice not only prevents lien avoidance but also prohibits a debtor from making late amendments to the schedule of exemptions. <u>See</u> <u>e.g.</u>, <u>Pope v. Clark (In re Clark)</u>, 274 B.R. 127, 136

(Bankr. W.D. Pa. 2002) ("[T]he bankruptcy court has the discretion to disallow the amendment of exemptions if the amendment has been made in bad faith or prejudices third parties.") (quoting In re Kaelin, 271 B.R. 316, 320 (B.A.P. 8th Cir. 2002)); In re Dougan, 350 B.R. 892, 895 (Bankr. D. Idaho 2006) ("The liberal policy in favor of allowing amendments must give way when the debtor has acted in bad faith or where creditors will be prejudiced by the delay in claiming the exemption.") (citing cases, including In re Goswami, 304 B.R. at 393).  As such, the Debtor's Amended Schedules A and C will be rejected by the Court.    An order consistent with this *Memorandum Opinion* will follow.


**Dated:** April 28, 2011                                    _____
                                                            **JEFFERY A. DELLER**
                                                            U.S. Bankruptcy Court

**CASE ADMINISTRATOR TO MAIL TO:**
     Rodney D. Shepard, Esq.
     J. Michael Baggett, Esq.                              **FILED**
     Donna M. Donaher, Esq.
     Christopher L. Borsani, Esq.                          APR 2 8 2011
     Natalie Lutz Cardiello, Esq., Chapter 7 Trustee
     Office of the U.S. Trustee                            CLERK, U.S. BANKRUPTCY COURT
                                                            WEST. DIST OF PENNSYLVANIA